UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

International Longshoremen's  
Association, Local Union No. 1982,

Case No. 3:13-cv-868

Plaintiff,

v.

MEMORANDUM OPINION
AND ORDER

Midwest Terminals of Toledo
International, Inc.,

Defendant.

## I. INTRODUCTION AND BACKGROUND

Plaintiff International Longshoremen's Association, Local Union No. 1982 ("Local 1982), alleges Defendant Midwest Terminals of Toledo International, Inc., violated § 301 of the Labor-Management Relations Act ("LMRA"), when Midwest refused to arbitrate certain union grievances as required by a collective bargaining agreement between the parties. (Doc. No. 1). Local 1982 seeks injunctive and declaratory relief.

Local 1982 is a labor organization associated with the International Longshoremen's Association. Among other things, it represented individuals employed by Midwest while negotiating and entering into a collective bargaining agreement that took effect in 2006 (the "2006 CBA").

(Doc. No. 1-1). Midwest operates the Port of Toledo on the Maumee River and provides stevedoring services to domestic and international commercial shipping companies.

Both Local 1982, (Doc. No. 55), and Midwest, (Doc. No. 56), have filed motions for summary judgment, and the parties have completed briefing on those motions. For the reasons stated below, Local 1982's motion is granted in part and denied in part, and Midwest's motion also is granted in part and denied in part.

## II. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## III. ANALYSIS

Local 1982 and Midwest disagree as to whether the 2006 CBA, which had an initial term of January 1, 2006, until December 31, 2010, remained in effect in 2011, when Midwest allegedly committed a number of contractual violations. Local 1982 filed grievances on behalf of its members concerning these violations and contends the 2006 CBA requires Midwest to engage in arbitration in order to resolve the disputes.

The dispute centers on Article 30 of the 2006 CBA, titled "Length of Contract" (the "Evergreen Clause"). The Evergreen Clause provides as follows:

2

> This agreement shall commence as of January 1, 2006. It shall continue in effect until 12:00 Midnight on the 31st day of December, 2010. Thereafter, it shall renew itself for yearly periods unless written notice of intent to terminate, modify, change, or amend the Agreement is received by either party from the other party not less than sixty (60) days but not more than ninety (90) days prior to December 31, 2010, or any extended expiration date. If the parties have not agreed with respect to any matter in dispute by 12:00 Midnight on December 31, 2010, or by 12:00 Midnight on any extended expiration date, either party may thereafter resort to strike or lockout, as the case may be.

(Doc. No. 1-1 at 25).

### A. REQUEST FOR DECLARATORY JUDGMENT

Local 1982 claims it is entitled to a declaration that the 2006 CBA automatically renewed pursuant to the Evergreen Clause and Midwest is obligated to arbitrate grievances arising from Midwest's conduct during the year 2011 (the "Grievances"). Local 1982 also contends, in the alternative, that Midwest separately agreed to arbitrate the Grievances, waived its objection to arbitration, and the parties' conduct after December 31, 2010, demonstrated their joint understanding that the terms of the 2006 CBA still controlled their relationship. (Doc. No. 55-1 at 12-14). For its part, Midwest argues the 2006 CBA did not renew because Local 1982 sent written notice of its intent to modify the 2006 CBA, and that Local 1982's conduct "made clear" the union believed the 2006 CBA had expired. (Doc. No. 56 at 7-11).

A court must interpret a collective bargaining agreement consistently with general principles of contract law, including the principle that if contractual language is unambiguous, that language will be enforced as it is written. *See, e.g., Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enterprises, Inc.*, 163 F.3d 965, 969 (6th Cir 1998). Local 1982 has shown there is no genuine dispute of material fact as to the meaning of the contract or the effect of the Evergreen Clause and it is entitled to judgment as a matter of law.

The Evergreen Clause creates a presumption of perpetuality. If neither party to the 2006 CBA took any action, the parties' contract would continue in full force and effect. Beginning in 2010, and for each year after, one party or the other could defeat this presumption by providing "written notice of [its] intent to terminate, modify, change, or amend the Agreement . . . not less than sixty (60) days . . . [nor] more than ninety (90) days prior to" December 31 of that year. (Doc. No. 1-1 at 25). If a party did some, but not all, of these things, the 2006 CBA would continue to govern the parties' relationship. (*See* Doc. No. 1-1 at 25 (stating the 2006 CBA "shall renew itself for yearly periods <u>unless</u> . . .") (emphasis added)).

Midwest contends Local 1982 satisfied the termination provision of the Evergreen Clause through a letter dated October 28, 2010, from John D. Baker, Jr., who had been appointed as a co-trustee of Local 1982, to Alex Johnson, Midwest's president. (*See* Doc. No. 56-8). Baker sent this letter within the time frame the Evergreen Clause dictates and, Midwest argues, Baker also raised the specter of collective bargaining negotiations. Therefore, Midwest asserts, Local 1982 terminated the 2006 CBA as of December 31, 2010, and it is not bound by the contract's arbitration provisions. I disagree.

It is true, as Midwest argues, that the law does not require a party's written notice of termination to take any particular form. Therefore, while a letter dated October 1, 2012, from Otis Brown, president of Local 1982, provides some insight into how the parties might have expected one side or the other would send "written notice of [its] intent to . . . modify" the 2006 CBA, neither party was, by any means, obligated to use that format or language. (*See* Doc. No. 55-23).

The problem for Midwest, however, is that nothing in Baker's 2010 letter, which primarily addresses a dispute concerning Local 1982's union steward, could objectively be read as communicating an intent to amend or modify the 2006 CBA. The pertinent part of Baker's letter to Johnson states:

4

> The next issue I need to address is [the assertion of Christopher Blakely, Midwest's Human Resources manager,] that you are no longer allowed to handle contract and grievance issues. This is bizarre to say the least since last we knew this was still your company. Moreover, during our many discussions and meetings over the past few weeks you never informed use that you were relieved of your responsibilities by Mr. Blakely. Unless and until we receive a signed letter from you directly that you are no longer involving yourself in collective bargaining agreement matters, we will continue to deal with you.
>
> As you and I have discussed recently, we need to meet to resolve the outstanding grievances and other contractual matters that remain pending. Let me know if you are available November 11 and 12, 2010.

(Doc. No. 56-8 at 3).

While Midwest now contends "Johnson presumed Local 1982 wished to bargain for a successor contract" because the Baker letter was dated during the notice period, Johnson's contemporaneous response lacks any evidence of this presumption. Instead, Johnson responded to Baker by stating "Blakely has the authority to discuss and negotiate contract issues on a day to day basis but not to sign contracts," and that Johnson had "delegated front line authority" to Blakely because Johnson no longer wanted to "spend an inordinate amount of [his] time educating your appointed Union Steward on the provisions of our contract." (Doc. No. 56-9 at 1; *see also* Id. (referring to the issues Baker described elsewhere in his October 28, 2010 letter as "trivial"). Further, Johnson wrote "[i]n the event there are strategic matters requiring discussion[,] I reserve my right to participate as I deem appropriate." (Doc. No. 56-9 at 1). Finally, Johnson's letter set dates for Midwest and Local 1982 to "discuss the outstanding grievances," not to negotiate a new CBA. Neither Baker nor Johnson wrote anything in their October 2010 letters that reasonably could be construed as expressing an intent to terminate or modify the 2006 CBA.

Midwest also argues I should conclude Local 1982 terminated the 2006 CBA because Baker submitted a notice to the Federal Mediation and Conciliation Service that Local 1982 had given Midwest written notice of the union's intention to renegotiate the 2006 CBA, (Doc. No. 55-6), and

5

because Baker testified his "standard practice" was to submit this notice after sending a letter to the employer requesting negotiations for a new CBA, though he couldn't recall if he followed that practice in this particular case. (Doc. No. 56-1 at 6). The 2006 CBA is clear, however, that written notice must be provided within the mandated time frame. Baker's October 28, 2010 letter does not meet the written notice requirement, and Midwest does not contend any other letter exists which fully satisfies the conditions of the Evergreen Clause. While Midwest does not concede Baker's October 28, 2010 letter is insufficient, the implication that another, suitable letter must have been sent does not create a genuine dispute of material fact.

For the purposes of this lawsuit, it simply does not matter if Baker told Johnson over the phone or in person that the union was interested in re-negotiating the 2006 CBA, or if Baker sent a letter to that effect in November 2010, or if the parties subsequently engaged in what ultimately would be unfruitful negotiations for a new CBA. The unambiguous language of the 2006 CBA requires written notice no more than 90 and no fewer than 60 days prior to the last day of the contract's term. There is no evidence in the record that that writing exists. As a result, I conclude Local 1982 is entitled to a declaratory judgment that the 2006 CBA automatically renewed pursuant to the Evergreen Clause and all of the terms of the 2006 CBA, including the parties' arbitration agreement, continued in full force and effect in 2011.

## B. REQUEST FOR PERMANENT INJUNCTION

Local 1982 also requests that I issue a permanent injunction ordering "Midwest to comply with the CBA and submit to arbitration all disputes and issues arising from the Grievances." (Doc. No. 1 at 5). "A plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, 'that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted,' and that it is in the public's interest to issue the injunction." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (quoting

*eBay Inc., et al. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Local 1982 does not identify any evidence to support the necessary conclusion that it has suffered or will suffer an irreparable injury for which there is no adequate legal injury. Therefore, I grant Midwest's motion for summary judgment on this issue and deny Local 1982's request for a permanent injunction.

### C. ATTORNEY FEES

Local 1982 also requests an award of attorney fees and costs. It is a "general rule that, absent statute or enforceable contract, litigants pay their own attorney fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975) (citations omitted). Local 1982 does not identify a statute or a contractual provision which would entitle it to recover attorney fees in this action, and I grant Midwest's motion for summary judgment on this issue and deny Local 1982's request for attorney fees.

### D. MOTION TO STRIKE JOHNSON DECLARATION

Finally, Local 1982 also moves to strike the unsigned declaration of Midwest's president, Alex Johnson. (*See* Doc. No. 62 at 3, n.1; Doc. No. 62-1). While I am skeptical of Midwest's assertion that filing Johnson's declaration without his personal signature complies with federal law, (Doc. No. 66 at 2), and of the implication that the fact that Johnson was traveling on the last day before Midwest's summary judgment opposition brief was due somehow justifies the 19-day delay in actually filing Johnson's signed declaration, I conclude Local 1982 has not sufficiently established Midwest's actions prejudiced Local 1982. Consequently, I deny Local 1982's motion to strike. (Doc. No. 63).

### IV.  CONCLUSION

For the reasons stated above, Local 1982's motion for summary judgment, (Doc. No. 55), is granted as to its claim for a declaratory judgment that the 2006 CBA automatically renewed pursuant to the Evergreen Clause and all of the terms of the 2006 CBA, including the parties' arbitration

agreement, continued in full force and effect in 2011.  Local 1982's motion is denied as to its claims for a permanent injunction and attorney fees and costs.  Midwest's motion for summary judgment, (Doc. No. 56), is denied as to Local 1982's claim for a declaratory judgment and granted as to Local 1982's claims for a permanent injunction and attorney fees and costs.  Further, Local 1982's motion to strike Alex Johnson's declaration, (Doc. No. 63), is denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge